UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Honeywell International Inc.,<br><br>        Plaintiff,<br><br>        v.<br><br>Exxon Mobil Corporation,<br><br>        Defendant. | Civil Action No. `5:10-cv-0008`<br>                          `(FJS/DEP)`<br><br>**COMPLAINT** |

Honeywell International Inc. ("Honeywell" or "Plaintiff"), by and through undersigned counsel, for its Complaint in this action, alleges the following:

**PRELIMINARY STATEMENT**

1. Honeywell brings this civil action pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701 *et seq.*, and New York State law, as set forth below, for costs incurred and to be incurred as a result of releases of hazardous substances by Defendant Exxon Mobil Corporation and/or its predecessors ("Exxon Mobil" or "Defendant") into Onondaga Lake, its tributaries, and onto land areas which drain into Onondaga Lake. Onondaga Lake is located in Onondaga County, New York.

2. These releases of hazardous substances into Onondaga Lake have caused contamination of sediment and surface water in Onondaga Lake, as well as contamination of fish and other aquatic life, and have caused conditions in and around the Lake that pose or may pose a threat of harm to the public health and safety.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to Sections 113(b) and 113(g)(3) of CERCLA, 42 U.S.C. §§ 9613(b), (g)(3), Section 1017(b) of OPA, 33 U.S.C. § 2717(b), and 28 U.S.C. §§ 1331, 1367.

4. Venue is appropriate in the Northern District of New York pursuant to 28 U.S.C. § 1391 and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened releases of hazardous substances that gave rise to this action occurred or will occur in this district.

## THE PARTIES

5. Honeywell is a Delaware corporation with its principal place of business at 101 Columbia Road, Morristown, New Jersey 07962.

6. Defendant Exxon Mobil Corporation is a New Jersey corporation with its principal executive offices at 5959 Las Colinas Boulevard, Irving, Texas 75039-2298.

## FACTS

### *Onondaga Lake*

7. Onondaga Lake is located in Onondaga County, New York.  The lake is approximately 4.5 miles long and 1 mile wide, with an average water depth of thirty-six feet.

8. For over one-hundred years, Onondaga Lake has received discharges of industrial wastewaters both directly and through its tributaries.

9. Sediments in Onondaga Lake have become contaminated with a variety of hazardous substances, including those it has received through industrial and sewage discharges, as well as surface runoff and contaminated groundwater discharges.

10. Numerous contaminants discharged into Onondaga Lake have been determined to create risk to human and ecological receptors. These pollutants include, but are not limited to: benzene, toluene, ethylbenzene, and xylenes ("BTEX"), cadmium, chlorinated benzenes, chromium, copper, dioxins and furans, lead, mercury, nickel, polychlorinated biphenyls ("PCBs"), polycyclic aromatic hydrocarbons ("PAHs"), and zinc. Each of these contaminants are present in sediment in Onondaga Lake, and are being addressed by remedial actions being undertaken by Honeywell.

### *Cleanup by Honeywell*

11. On June 23, 1989, the New York State Department of Environmental Conservation ("DEC") added Onondaga Lake to the New York State Registry of Inactive Hazardous Waste Disposal Sites. On December 16, 1994, pursuant to CERCLA, the United States Environmental Protection Agency ("EPA") listed Onondaga Lake and certain upland areas on the National Priorities List, thereby designating Onondaga Lake as a Superfund Site.

12. On June 27, 1989, the State of New York commenced a civil action against Honeywell's predecessor Allied-Signal Inc. ("Allied Signal") in the United States District Court for the Northern District of New York under Section 107 of CERCLA. *New York v. Honeywell International Inc.*, 89-CV-815 ("Litigation"). In its suit, the State sought to compel Allied-Signal to investigate and remediate contamination in the sediments of Onondaga Lake and in associated upland areas.

13. Allied-Signal (and after 1999, Honeywell) undertook a comprehensive Remedial Investigation and Feasibility Study ("RI/FS") of the Onondaga Lake Sediments under DEC oversight. The RI/FS was completed in November 2004.

14. On July 1, 2005, DEC and the EPA issued a Record of Decision ("ROD") for the Onondaga Lake Bottom Subsite, which details the selected remedy for the lake. Pursuant to the ROD, the selected remedy includes a mixture of sediment dredging, isolation capping, and thin layer capping, as well as certain other measures, including the construction of a sediment consolidation area to contain dredged sediment, and the construction of a barrier wall on the southeastern portion of the lake to prevent contamination from migrating into the lake from upland sources. In addition, the ROD requires the implementation of institutional controls and long-term maintenance and monitoring of the remedy.

15. The ROD estimates the total cost of the selected remedy at $451,000,000.

16. On January 4, 2007, the U.S. District Court entered a Consent Decree between DEC and Honeywell in which Honeywell agreed to fund and implement the remedy set forth in the ROD.

17. Since entry of the 2007 Consent Decree, Honeywell has worked diligently to design and implement the remedy set forth in the ROD. Honeywell remains fully committed to fulfilling its obligations under the Consent Decree and to completing the selected remedy within the schedule set forth in the Consent Decree.

### *Defendant Exxon Mobil*

18. The Record of Decision specifically identifies industries located in an area called "Oil City" as contributors of hazardous substances to Onondaga Lake. The ROD states: "[m]ultiple external sources and potential sources for some of the CPOIs present in the lake were identified . . . including . . . the former Oil City area. The former Oil City area was used as a bulk storage and transfer facility for numerous industries."

19. Oil City refers generally to a former industrial area in the City of Syracuse located north of the downtown business area. The area is bounded by Onondaga Lake to the north, and by interstate highways to the east, south and west.

20. In the over 80 years of operation of Oil City, it is estimated that more than 250,000 gallons of material, including PAHs, leaked or spilled on the properties and contaminated the soil and ground water.

21. The ROD states "High molecular weight PAHs (HPAHs) are concentrated in the sediments throughout much of the southern basin of the lake, with the highest concentrations occurring off the former Oil City shoreline region and the shoreline areas near the Honeywell sites."

22. Oil City was closed in the mid- to late-1990s, and the area continues to be remediated.

23. Defendant Exxon Mobil and/or its predecessors operated a major on-shore petroleum storage facility, known as the Mobil Terminal facility ("Mobil Terminal"), in the area known as Oil City.

24. Mobil Terminal began operation in or around 1918.

25. Mobil Terminal operated on three adjacent parcels at the following locations: (i) 300 Bear Street; (ii) 301 Bear Street; and (iii) 502 Solar Street, with the street address of 502 Solar Street, Syracuse, New York. Together, the three parcels covered an area of more than 550,000 square feet.

26. Mobil Terminal was located immediately adjacent to Onondaga Creek, approximately 0.5 miles upstream from Onondaga Lake.

27. Onondaga Creek is a tributary of Onondaga Lake.

5

28.     Mobil Terminal consisted of a distribution terminal and at least thirteen tanks that were used to store various products, including jet fuel, diesel, gasoline, and kerosene. These tanks had the capacity to store more than 400,000 gallons of petroleum products.

29.     Storage tanks and pipelines at Mobil Terminal often leaked petroleum, kerosene, diesel, gasoline and hazardous substances into the soil.

30.     In addition to leaks, there were frequent spills at Mobil Terminal.

31.     For example, there were at least fourteen reported spills of petroleum, kerosene, diesel, and gasoline at the site between 1990 and 1998, including one spill of 3,000 gallons of gasoline in 1995 caused by a pipeline malfunction.

32.     Soil sampling and groundwater monitoring wells has revealed high concentrations of fuel oil and petroleum at various locations at Mobil Terminal.

33.     In addition, sampling at Mobil Terminal has revealed the presence of hazardous substances, including but not limited to benzene, toluene, ethylbenzene, xylene, 1,3,5-Trimethlybenzene, 1,2,4-Trimethylbenzene, Naphthalene, and Isopropylbenzene.

34.     Upon information and belief, during its operation of Mobil Terminal, Defendant discharged substantial quantities of hazardous substances, including benzene, toluene, ethylbenzene, xylene, 1,3,5-Trimethlybenzene, 1,2,4-Trimethylbenzene, Naphthalene, and Isopropylbenzene, into Onondaga Lake.

35.     These hazardous substances have contributed to the pollution and contamination of Onondaga Lake.

**COUNT ONE**

**CERCLA CONTRIBUTION CLAIM**

36.     Honeywell repeats and incorporates herein by reference the allegations of all of the foregoing paragraphs.

37.     Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), provides in pertinent part that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 . . . or under section 9607(a) . . . ."

38.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part that any "person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" shall be liable "for . . . any . . . necessary costs of response by any other person consistent with the national contingency plan."

39.     Additionally, Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), provides that "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to [the] settlement."

40.     Defendant and Honeywell are "persons" within the meaning of Section 101(22) and Sections 107(a) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9601(22), 9607(a), 9613(f)(1).

41.     At the time of the disposal and releases, Defendant and/or its corporate predecessors were "owners," "operators," and/or "arrangers" within the meaning of Sections 101(20) and 107(a) of CERCLA, 42 U.S.C. § 9601(20), 9607(a).

42. Mobil Terminal, sewers, pipes, tributaries to Onondaga Lake, and Onondaga Lake are "facilities" within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9), 9607(a).

43. There were "releases" and/or "threatened releases" of "hazardous substances" into the environment at and from the facilities, as those terms are defined in CERCLA. 42 U.S.C. §§ 9601(8), (9), (14), and (22), and § 9607(a).

44. Defendant arranged for disposal of hazardous substances owned or possessed by Defendant at one or more facilities, including, but not limited to Mobil Terminal, sewers, pipes, tributaries to Onondaga Lake, and Onondaga Lake, within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. §§ 9607(a)(3).

45. Defendant was the owner or operator at the time of disposal of hazardous substances of one or more facilities, including Mobil Terminal, from which there has been a release of hazardous substances, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

46. Hazardous substances were "disposed" of at the facilities, within the meaning of Sections 101(14), 101(29) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), (29) and § 9607(a).

47. The disposal and releases of these substances have contributed hazardous substances to the Onondaga Lake Superfund Site and, more specifically, have contributed hazardous substances to the Lake Bottom Subsite of the Onondaga Lake Superfund Site.

48. In the 2007 Consent Decree, Honeywell resolved its liability to the State of New York for some or all of the costs of the RI/FS and the ROD remedy, both of which constitute response actions within the meaning of CERCLA. 42 U.S.C. § 9601(25). The 2007 Consent

Decree constitutes a judicially-approved settlement within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

49. Defendant was not a party to the Consent Decree.

50. Honeywell has incurred, and will continue to incur, "necessary costs of response . . . consistent with the national contingency plan" in the course of its investigation and cleanup of contamination in the Onondaga Lake sediments and fulfillment of its obligations under the 2007 Consent Decree. 42 U.S.C. § 9607(a)(2).

51. Accordingly, Defendant is liable to Honeywell under Section 113 of CERCLA for an equitable share of the necessary costs of response incurred by Honeywell consistent with the national contingency plan.

52. An actual controversy currently exists between Honeywell and Defendant with regard to Defendant's liability for the costs that Honeywell has incurred, and will incur, in connection with the environmental contamination at Onondaga Lake. Pursuant to the Consent Order, Honeywell will continue to incur substantial response costs in addressing the environmental contamination at Onondaga Lake. A declaratory judgment is therefore appropriate defining Defendant's liability to Honeywell for these future costs that will be binding in any subsequent action or actions that Honeywell may bring to recover response costs against Defendant.

## **RELIEF REQUESTED**

WHEREFORE, Honeywell requests judgment in its favor:

1. Ordering Defendant, pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), to contribute its equitable share of response costs incurred or to be incurred by Honeywell with respect to the investigation and remediation of environmental contamination at the Onondaga

Lake Superfund Site, plus interest and costs, attorneys' fees, and such other relief as the Count may deem appropriate and just.

2. Entering a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), which will be binding in any subsequent action or actions that Honeywell may bring to recover response costs against Defendant, that Defendant is liable for its equitable share of response costs that Honeywell may incur in the investigation and cleanup of environmental contamination at the Onondaga Lake Superfund Site.

## COUNT TWO

## OPA CONTRIBUTION CLAIM

53. Honeywell repeats and incorporates herein by reference the allegations of all of the foregoing paragraphs.

54. Section 1002(a) of OPA, 33 U.S.C. § 2702(a), provides in pertinent part, as follows:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident.

55. The Plaintiffs have incurred removal costs consistent with the National Contingency Plan, as defined by Section 1001(19) of OPA, 33 U.S.C. § 2701(19).

56. The Lake Bottom Subsite of the Onondaga Lake Superfund Site includes navigable waters and adjoining shorelines, as defined in Section 1001(21) of OPA, 33 U.S.C. § 2701(11).

57. Defendant is a responsible party, as defined in Section 1001(32) of OPA, 33 U.S.C. § 2701(32).

58. On information and belief Defendant owned or operated a facility from which oil was discharged into the Lake Bottom Subsite of the Onondaga Lake Superfund Site, within the meaning of sections 1001(9) and 1002 of OPA, 33 U.S.C. §§ 2701(9) and 2702.

59. Defendant is liable in contribution to Honeywell under Sections 1009 and 1017 of OPA, 33 U.S.C. §§ 2709 and 2717.

60. An actual controversy currently exists between Honeywell and Defendant with regard to Defendant's liability for the costs that Honeywell has incurred, and will incur, in connection with the environmental contamination at Onondaga Lake.  Pursuant to the Consent Order, Honeywell will continue to incur substantial response costs in addressing the environmental contamination at Onondaga Lake.  A declaratory judgment is therefore appropriate defining Defendant's liability to Honeywell for these future costs that will be binding in any subsequent action or actions that Honeywell may bring to recover response costs against Defendant.

**RELIEF REQUESTED**

Wherefore, Honeywell requests judgment in its favor,

1. Ordering Defendant, pursuant to Sections 1002, 1009 and 1017 of OPA, 33 U.S.C. §§ 2702, 2709, and 2717, to contribute its equitable share of response costs incurred or to be incurred by Honeywell with respect to the investigation and remediation of environmental contamination at the Onondaga Lake Superfund Site, plus interest and costs, attorneys' fees, and such other relief as the Count may deem appropriate and just.

2. Entering a declaratory judgment pursuant to 28 U.S.C. § 2201, which will be binding in any subsequent action or actions that Honeywell may bring to recover response costs against Defendant, that Defendant is liable for its equitable share of response costs that

Honeywell may incur in the investigation and cleanup of environmental contamination at the Onondaga Lake Superfund Site.

## COUNT THREE

## STATE LAW CONTRIBUTION CLAIM

61. Honeywell repeats and incorporates herein by reference the allegations of all of the foregoing paragraphs.

62. New York CPLR § 1401 and common law provide that if two or more persons are subject to liability for damages or costs for the same injury, one person may claim contribution from the other for any damages or costs incurred by that person in excess of his or her equitable share.

63. As a direct and proximate result of the acts and/or omissions of Defendant, Honeywell has incurred, and will incur in the future, response costs for the investigation and remediation of the contamination at Onondaga Lake in excess of its equitable share.

64. An actual controversy currently exists between Honeywell and Defendant with regard to Defendant's liability for the costs that Honeywell has incurred, and will incur, in connection with the environmental contamination at Onondaga Lake. Pursuant to the Consent Order, Honeywell will continue to incur substantial response costs in addressing the environmental contamination at Onondaga Lake. A declaratory judgment is therefore appropriate defining Defendant's liability to Honeywell for these future costs that will be binding in any subsequent action or actions that Honeywell may bring to recover response costs against Defendant.

## **RELIEF REQUESTED**

Wherefore, Honeywell requests judgment in its favor,

1.	Ordering Defendant, pursuant to New York CPLR § 1401, and common law, to contribute its equitable share of the costs that Honeywell has incurred and will incur in addressing the contamination at the Onondaga Lake Superfund Site, plus interest and costs, attorneys' fees, and such other relief as the Count may deem appropriate and just.

2.	Entering a declaratory judgment pursuant to CPLR §3001, which will be binding in any subsequent action or actions that Honeywell may bring to recover response costs against Defendant, as to the rights and duties of the parties and, in particular, a determination of Defendant's liability to contribute a percentage of the costs of investigation and cleanup that Honeywell may incur in the investigation and cleanup of environmental contamination at the Onondaga Lake Superfund Site.

## **COUNT FOUR**

## **NEW YORK NAVIGATION LAW CONTRIBUTION CLAIM**

65.	Honeywell repeats and incorporates herein by reference the allegations of all of the foregoing paragraphs.

66.	Defendant and their predecessors "discharged" "petroleum," as those terms are defined by N.Y. Nav. Law §§ 172(8) and (15), at Onondaga Lake.

67.	Defendant's "petroleum" "discharges" at Onondaga Lake were into the waters of the State of New York and/or onto lands from which the discharges might flow or drain into those waters.

68.     Honeywell has incurred and will continue to incur "cleanup and removal" costs, as that phrase is defined by N.Y. Nav. Law § 172(5), at Onondaga Lake, which were undertaken with the approval of NYSDEC.

69.     Honeywell's actions related to the "cleanup and removal" of "petroleum" at the Onondaga Lake Superfund Site have been in accordance with the National Contingency Plan, codified at 40 C.F.R. Part 300, and as required by N.Y. Nav. Law § 176(4).

70.     Defendant is liable to Honeywell, pursuant to N.Y. Nav. Law § 181(1), for contribution, in an amount to be determined at trial, of cleanup and removal costs incurred by Honeywell to date with respect to Onondaga Lake, as well as for all additional costs incurred by Honeywell through the date of entry of judgment in this action.

71.     An actual controversy currently exists between Honeywell and Defendant with regard to Defendant's liability for the costs that Honeywell has incurred, and will incur, in connection with the environmental contamination at Onondaga Lake.  Pursuant to the Consent Order, Honeywell will continue to incur substantial response costs in addressing the environmental contamination at Onondaga Lake.  A declaratory judgment is therefore appropriate defining Defendant's liability to Honeywell for these future costs that will be binding in any subsequent action or actions that Honeywell may bring to recover response costs against Defendant.

## **RELIEF REQUESTED**

WHEREFORE, Honeywell requests judgment in its favor,

1.     Ordering Defendant, pursuant to N.Y. Nav. Law § 181(1), to contribute its equitable share of response costs incurred or to be incurred by Honeywell with respect to the investigation and remediation of environmental contamination at the Onondaga Lake Superfund

Site, plus interest and costs, attorneys' fees, and such other relief as the Count may deem appropriate and just.

  2. Entering a declaratory judgment pursuant to CPLR §3001, which will be binding in any subsequent action or actions that Honeywell may bring to recover response costs, as to the rights and duties of the parties and, in particular, a determination of Defendant's liability to contribute a percentage of the costs of investigation and cleanup that Honeywell may incur in the investigation and cleanup of environmental contamination at the Onondaga Lake Superfund Site.

## **DEMAND FOR JURY TRIAL**

  Honeywell. hereby demands trial by jury of any and all issues so triable.

Dated: January 4, 2010

             ARNOLD & PORTER LLP

Of Counsel:        By: /s/
             Anthony D. Boccanfuso
Brian D. Israel        Arnold & Porter LLP
Arnold & Porter LLP      399 Park Ave.
555 Twelfth Street, NW     New York, New York  10022
Washington, DC  20004-1206   Telephone:  212.715.1000
Telephone:  202.942.6546    Fax:  212.715.1399
Facsimile:  202.942.5999     email:  anthony.boccanfuso@aporter.com
email:  brian.israel@aporter.com

             Attorneys for Honeywell International Inc.